Civil action arising under the Federal Employers' Liability Act, and tried upon the following issues:
"1. Was the plaintiff's intestate killed by the negligence of the defendant as alleged in the complaint? Answer: Yes.
"2. Did the plaintiff's intestate, by his own negligence, contribute to his injury? Answer: No.
"3. Did the plaintiff's intestate voluntarily assume the risk incident to performing the work in the manner in which he undertook to do it? Answer: No.
"4. What damages, if any, is plaintiff entitled to recover? Answer: $15,000.00.
"5. What part of the recovery, if any, is the widow entitled to? Answer: $5,000.00.
"6. What part, if any, is the son entitled to? Answer: $10,000.00."
From a judgment on the verdict in favor of plaintiff, the defendant appeals, assigning errors.
It is alleged in the complaint and admitted by the answer that the defendant is a common carrier by railroad, engaged in interstate commerce, and that plaintiff's intestate was employed by the defendant in such commerce, at the time of his injury and death. The case, therefore, is one arising under the Federal Employers' Liability Act, and it has properly been tried under that act. Shanks v. Del. R. Co., 239 U.S. 556; Capps v.R. R., 183 N.C. 181. The deceased employee left a widow and one small son him surviving, and his administrator, or personal representative, is prosecuting this suit on behalf of these persons, who fall in the first class of beneficiaries under the statute. Horton v. R. R., 175 N.C. 472;Dooley v. R. R., 163 N.C. p. 463.
The defendant's chief assignment of error, or the one most strongly urged on the argument and in its brief, is the exception addressed to the *Page 446 
refusal of the court to grant its motion for judgment as of nonsuit, made as permitted by C. S., 567, at the close of plaintiff's evidence. There was no evidence offered by the defendant. With reference to the rule of procedure applicable, authorized by statute in his jurisdiction, it is uniformly held that on a motion for involuntary nonsuit, considered with us as equivalent to a demurrer to the evidence, the facts making for the plaintiff's claim and which tend to support his cause of action, must be taken as true and construed in the light most favorable to him. Nash v.Royster, 189 N.C. p. 410; Lamb v. R. R., 179 N.C. p. 623.
Viewing the evidence under this rule and in its most favorable light for the plaintiff, we find the following facts sufficiently established, or as reasonable inferences to be deduced from the testimony of the witnesses:
1. Plaintiff's intestate, R. C. Murray, was killed about 4:00 a. m., 21 January, 1921, while in the discharge of his duties as brakeman on the defendant's northbound freight train, No. 212, composed of a Pacific-type engine, No. 1558, tender and 75 cars, as it approached Rennert's Siding, approximately 20 miles south of Fayetteville, N.C. on an intestate run from Florence, S.C., to points as far north as Rocky Mount, N.C.
2. The freight train in question was running on a "time order," ahead of No. 86, one of the defendant's fast passenger trains, and the engineer of the freight train, with only "running time and clearance time" and probably a few minutes to spare, was preparing to take the spur track at Rennert's Siding, so that No. 86 might pass at this point.
3. It was the duty of plaintiff's intestate to throw the switch in order that the freight train might clear the track for the oncoming passenger train.
4. Plaintiff's intestate was riding on the engine with the engineer; he knew of the order to clear the main line for No. 86, and the time within which the rule of the company required this to be done; he said to the engineer as they came within a mile and a half or more of Rennert's Siding, "When we get there I will go out and set the switch so you will not have to stop," to which the engineer replied, "Well, I will appreciate it." This was equivalent to an order from the engineer to throw the switch.
5. Plaintiff's intestate left the cab of the engine, from the fireman's side, walked along the narrow foot board about 14 inches wide, leading from the cab to the pilot of the engine and which is provided for going along that way and is protected by a small hand rail, but he fell and was killed by the train before it reached the switch. *Page 447 
6. At the time plaintiff's intestate left the cab to go out over the engine and across the pilot, the train was running at a rate of 15 or 18 miles an hour and was about a quarter of a mile from Rennert's Siding. He expected to jump from the pilot to the ground, run ahead of the moving train and open the switch so that it could take the siding without coming to a full stop. This was the customary method of throwing switches for these trains, and the officials of the company knew of its practice, but the evidence is conflicting as to whether such practice was in violation of the rules of the company.
7. There was evidence from which the jury could infer that after plaintiff's intestate left the cab of the engine, the speed of the train was reduced from 18 miles per hour to 5 miles per hour within a comparatively short distance; and from this circumstance plaintiff contended that his intestate fell from the engine by reason of a sudden jerk or jolt, though there was direct evidence in denial of any unusual jar of the train.
8. It was further in evidence that the pilot of the engine was in a damp, frosty condition and the night dark and pretty cold.
Upon these the facts chiefly pertinent and bearing directly on the question of the defendant's liability, we think the trial court correctly submitted the case to the jury, and that the motion for judgment as of nonsuit was properly overruled. There is ample evidence to warrant the jury in finding, as it did, that plaintiff's intestate was negligently permitted and directed to leave the train under conditions that were not safe, and that he was negligently precipitated from the engine, which resulted in his death. New Orleans, etc., R. R. v. Harris, Admr., 247 U.S. 367; Sweeneyv. Erving, 228 U.S. 233; Looney v. R. R., 200 U.S. 480; Ridge v. R. R.,167 N.C. 510.
Speaking to a similar question in Fitzgerald v. R. R.,141 N.C. p. 534, Hoke, J., said: "It is very generally held that direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances, and it is well established that if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence," citing authorities for the position.
The defendant may have elicited on cross-examination, evidence somewhat contradictory to that above detailed, but this only affected the credibility of the witnesses and did not destroy their testimony. Christmanv. Hilliard, 167 N.C. 4.
Animadverting on a similar situation in Shell v. Roseman,155 N.C. p. 94, Allen, J., said: "We are not inadvertent to the fact that the plaintiff made a statement on cross-examination as to a material matter, *Page 448 
apparently in conflict with his evidence when examined in chief, but this affected his credibility only, and did not justify withdrawing his evidence from the jury. Ward v. Mfg. Co., 123 N.C. 252."
Again it is the accepted position with respect to cases arising under the Federal Employers' Liability Act that the doctrine of assumption of risk has no application when the negligence of a fellow-servant or coemployee, which the injured party could not have foreseen or expected, is the sole, direct and immediate cause of the injury. Seaboard R. R. Co. v.Horton, 233 U.S. 492; Cobia v. R. R., 188 N.C. 487; Bass v. R. R.,183 N.C. 444.
In Reed v. Director General of Railroads, 258 U.S. 92, 66 L.Ed., 480, a caboose of an interstate train was being moved in front of a locomotive through the railroad yards at South Bethlehem, Pa., and over tracks equipped with derailing devices; the engineer could not see these devices when operating the engine from his cab, and, for this reason, Leo C. Reed, a member of the train crew, was directed to and did locate himself on the front of the caboose, with the duty to signal the engineer in time for him to stop, if it should be discovered that one of the derailing devices was set against further passage. One was so set, but, either through the negligence of Reed himself, or of the engineer in failing to notice or heed his signaling, the locomotive did not stop with safety, the caboose was derailed, and Reed was crushed to death between it and cars on an adjoining track. Accepting the view that the engineer's negligence was the proximate cause of the fatal injury, the Supreme Court of Pennsylvania held the decedent had assumed the risk of such negligence and the master was not liable. This was reversed on certiorari by the Supreme Court of the United States, and in delivering the opinion of the Court, Mr. Justice McReynolds, said:
"In actions under the Federal act, the doctrine of assumption of risk certainly has no application when the negligence of a fellow-servant, which the injured party could not have foreseen or expected, is the sole, direct, and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad, while engaged in interstate commerce, shall be liable to the personal representative of any employee killed while employed therein, when death results from the negligence of any of the officers, agents, or employees of such carriers."
The remaining exceptions are without substantial merit; they have all been covered by former adjudications. We have examined the authorities cited in the defendant's carefully prepared brief, but find that they are easily distinguishable from the case at bar by reason of the peculiar facts here presented. Viewing the record in its entirety, we think the verdict and judgment should be upheld.
No error.
APPEALS FROM SUPREME COURT OF NORTH CAROLINA
IN THE SUPREME COURT OF THE UNITED STATES
Atlantic Coast Line Railroad Company v. George L. Wimberly, Jr., Administrator. Petition for certiorari granted, 8 March, 1926. *Page 449