12975

POWE v. A. C. L. R. R. CO.

(159 S. E., 473)

124

*Messrs. Thomas W. Davis, Hagood, Rivers & Young,* and *V. E. Phelps,* for appellant,

*Messrs. Logan & Grace* and *Lionel K. Legge,* for respondent,

September 30, 1930.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON.

This action was commenced in the Court of Common Pleas for Charleston County on the 30th day of May, 1924. The action was originally in the name of C. M. Tyner as administrator of the estate of George A. Marshall, as plaintiff, against the defendant Atlantic Coast Line Railroad Company. The case has been twice tried, and after the first trial C. M. Tyner died, and by an order dated 19th of September, 1929, J. L. Powe was appointed administrator of the estate of George A. Marshall and as such administrator was substituted as plaintiff.

The action was one admittedly under the Federal Employers' Liability Act and the amendments thereto (45 U. S. C. A., §§ 51-59).

The case was first tried on October 10, 1925, and resulted in a verdict in favor of the plaintiff for the sum of $28,800.-00. An appeal was taken to the South Carolina Supreme Court, which affirmed the decision of the lower Court. *Tyner, Administrator, v. A. C. L. R. Co.,* 149 S. C., 89, 146 S. E., 663. The defendant carried the case on a writ of certiorari to the United States Supreme Court and the same was reversed and remanded for a new trial. *Atlantic C. L. R. Co. v. Tyner,* 278 U. S., 565, 49 S. Ct., 35, 73 L. Ed., 508. The case was again tried at Charleston in October, 1929, before Judge Rice and a jury and resulted in a verdict in favor of the plaintiff for the sum of $30,000.00.

A full statement of the pleadings and facts developed on the first trial of the case can be found in *Tyner, Administrator, v. A. C. L. R. Co., supra,* and only a brief statement will here be made with such facts as were developed on the

second trial of the cause which were not developed on the first trial. George A. Marshall was employed as a switchman by the defendant railroad company, and on January 6, 1923, was killed while in such employment. He left surviving him a widow and three small children for whose benefit the action was brought under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59).

The first two paragraphs of the complaint cover the formal allegations as to the appointment of the administrator and for the benefit of whom the action was brought. The third paragraph of the complaint alleges the incorporation of the defendant; that at the time the defendant was engaged in interstate commerce and that the said George A. Marshall, while employed by said railroad corporation and while engaged in the duties incident to and growing out of his employment, met with an accident on or about the 5th day of January, 1923, and was so badly injured as to cause his death. The fourth allegation of the complaint alleges that the action was brought under the provisions of the Federal Employers' Liability Act. The fifth and sixth allegations of the complaint were as follows:

"Fifth: On information and belief, that on said 6th day of January, 1923, said deceased, George A. Marshall, was engaged in the performance of his duties as a switchman attached to an engine and train of cars moving over defendant's main line of tracks at or near the City of Charleston, State aforesaid, and in the direction of said city; that it was dark and foggy, the time being about three o'clock in the morning; that while proceeding as aforesaid at or about Five Mile Crossing, near said city the said engine and train of cars were caused to be stopped by reason of trouble with the brakes on some of said cars, and that the said George A. Marshall in the course of his duty and employment got down to the ground to examine into and correct said trouble; that at or near the point where said engine and train of cars had stopped as aforesaid, defendant herein, Atlantic Coast

Line Railroad Company, its agents and servants, in violation of its duty to furnish for the use of the said George A. Marshall a reasonably safe roadbed and track free from obstructions which might be placed on the side of the track, and to place and maintain signal devices at a reasonably safe distance from the track, so as not to extend over towards the track in such close proximity as to endanger the lives of its employees who might be running or operating its trains by said signal devices, had placed and maintained a signal device or obstruction too close to the track, and in such close proximity to the track as to leave an insufficient space intervening between it and the side of the train, and so close as to interfere with the proper operation of defendant's trains and the proper performance of their duties by its employees thereabout, so that upon said train proceeding forward, and while the said George A. Marshall was mounting the ladder of one of the cars attached or while he was examining the defective car as aforesaid, the defects in which were due to the negligence of the defendant herein, thereby necessitating that said decedent examine the same, and while thus engaged in the duties incident to his employment, he was struck by said signal device or obstruction and thrown from his train and so badly injured as to cause his death soon thereafter.

"Sixth : That the injuries and death of the said George A. Marshall were caused by the negligence, carelessness, recklessness, wilfulness and wantonness of said defendant, Atlantic Coast Line Railroad Company, its agents and servants, as aforesaid, and in the following particulars, to wit :

"(a) In failing and omitting to furnish the said decedent a reasonably safe place to work.

"(b) In failing and omitting to furnish a reasonably safe roadbed and track free from obstructions.

"(c) In failing and omitting to place and maintain said signal device at a reasonably safe distance from the track.

"(d) In causing and allowing said signal device or obstructions to be placed and maintained too close to the track.

"(e) In causing and allowing said signal device or obstructions to be placed and maintained in such close proximity to the track as to leave insufficient space between it and the side of a train within which employees might safely perform the duties incident to their employment, and the proper operating of defendant's trains.

"(f) In causing and allowing said signal device or obstruction to be at the point, place and position the same was maintained.

"(g) In failing and omitting to notify or warn said decedent of the close proximity of said signal device or obstructions to the side of the train.

"(h) In causing and allowing a defective and bad outer box car to be attached to and form a part of the train and to be transported by the engine to which decedent was attached.

"(i) In causing and allowing said engine and train of cars to be run at a high and dangerous and excessive rate of speed within the yard limits and block system of defendant and in violation of its rules and regulations governing the same."

The seventh allegation was that George A. Marshall left him surviving his wife and three minor children who depended upon him for support and maintenance; that he was earning $180 per month and was a young man of twenty-five years, strong, healthy and able-bodied; and that his death resulted in great pecuniary loss to said wife and children.

The eighth paragraph demands judgment in the sum of $50,000.00.

As the answer of the defendant is involved in the consideration of the exceptions made by the defendant, it is here given in full:

"First: It admits the allegations of the first, third and fourth paragraphs, and so much of the second paragraph as alleges that the said decedent, George A. Marshall, on the 6th day of January, 1923, and for some time prior thereto.

was employed by the defendant railroad company in the capacity of switchman.

"Second: It denies each and every other allegation in said complaint not hereinabove or hereinafter specifically admitted.

"Third: Further answering said complaint and with specific reference to the subdivisions a, b, c, d, e, f, and g in paragraph sixth of the complaint, and the other allegations in the complaint referring to the semaphore hereinafter mentioned, the defendant alleges that heretofore, to wit, on or about the 24th day of May, 1916, the Railroad Commission of South Carolina in Circular No. 211, amending Circular No. 208 with regard to clearance, unanimously adopted the following resolution:

" 'Taking into consideration not only the safety of the general public and employees of the railroad, but for the further consideration that it is absolutely necessary for all railroad employees to give and receive signals:

" 'Be it resolved that no building, or platform, or other obstruction be allowed erected or maintained nearer than four feet of the outer edge of the nearest rail of the main or side track of any railroad in the State of South Carolina. This limit of clearance shall not apply to bridges already constructed, or to passenger station landings.'

"A copy of which was served upon the defendant by said Railroad Commission; also, that on or about October 11th, 1916, the Railroad Commission of South Carolina in Circular No. 216 with regard to clearances, adopted the following resolution:

" 'Taking into consideration not only the safety of the general public and employees of the railroad, but for the further consideration that it is absolutely necessary for all railroad employees to give and receive signals;

" 'Be it resolved that no building, or platform, or other structure about station grounds be allowed erected or maintained nearer than four feet from the outside edge of the

main or side track of any railroad in the State of South Carolina, measurement being made at rail top level; and furthermore, that no obstruction be allowed erected or maintained at any point other than station grounds nearer than four feet from the outer edge of the main or side track rail of any railroad in the State of South Carolina, measurement being made four feet above the top of the rail.

" 'This limit of clearances shall not apply to bridges already constructed, or to passenger landings.'

"A copy of which was also served upon this defendant by the said Railroad Commission.

"Fourth: That this defendant complied with the terms of the said resolution in the erection of the semaphore mentioned in the complaint, the same being at a greater distance than four feet from the outer edge of the nearest rail of the track at the point as so required. ·

"Fifth: Further answering said complaint and for a further defense to the said action, on information and belief the defendant alleges that the injuries and death of the said George A. Marshall were due to and caused by one of the risks of his employment assumed in working for the defendant, that is to say, the risk of riding on the side of a freight car and of passing various obstructions such as signal devices, semaphores and the like, whose presence was known to him and the dangers of which were obvious and so assumed by him.

"Sixth: Subject to defendant's motion to strike out certain allegations of the complaint with reference to defects in certain of the freight cars on the said train mentioned in said complaint, and subject further to its motion to make said allegations more definite and certain, in various particulars, and saving and reserving all its rights under said motions, and further answering said complaint and for a further defense to said action, on information and belief, the defendant alleges that the injuries and death of the said George A. Marshall were due to and caused by one of the

risks of his employment, assumed in working for the defendant, that is to say, the risk of the work of a switchman about cars, with defects arising in the ordinary operation of the cars the occurring of such defects in such operation being reasonably in the contemplation of the parties when the deceased undertook to work for the defendant, and said defects in this case being obvious and actually known to the deceased and ordinarily incident to his employment.

"Seventh: Further answering said complaint, and for a further defense to said action, this defendant alleges that the injuries and death of the deceased were due to and caused by the negligence of the said deceased contributing and combining and concurring with the alleged negligence of the defendant and constituting a proximate cause thereof, without which the same would not have happened, in the following particulars, to wit:

"(a) In not going directly to the roof of the freight car on which he was riding as instructed by the conductors of said train, but in remaining on the side of the car, contrary to said orders and instructions.

"(b) In not keeping a proper lookout for the signal devices and other obstructions which are ordinarily erected on the side of tracks of the defendant, near said tracks.

"(c) In failing and omitting to keep a proper lookout for the semaphore mentioned in the complaint herein, whose presence and location were well known to the deceased.

"(d) In leaning outward from the ladder of said freight car so far as to bring his body in contact with the said semaphore erected at a greater distance from the track than is required by the regulations of the South Carolina Railroad Commission, hereinbefore set forth."

The plaintiff offered two pieces of evidence which were not given at the former trial which were vital to the plaintiff's case. The first was the testimony on the part of the witness C. C. Tyner, a brother-in-law of the deceased, who was in the employ of the Atlantic Coast Line Railroad and

for that reason did not care to testify in the trial, who testified in substance that he knew the location of semaphore 3911; that on the morning of the 6th of January, 1923, he went to semaphore 3911 and examined the semaphore casing and surrounding conditions; that he found about four feet from the base of the semaphore something had apparently wiped the smoke and the soot from the semaphore and about six or seven inches further there were apparently blood stains on the north side of the semaphore casing; that he examined the body of Marshall and found a pad on the back of the head and two blood clots on each side of the pad and the head was crushed in and soft; that switchmen and brakemen are supposed to ride wherever their duties call them on the train; that a car moving at the rate of twenty or twenty-five miles an hour would have from ten to twenty inches sway in it; that he arrived at the scene of the accident about noon or a little after noon on the 6th of January along with a Mr. J. H. Lee.

In the first trial there seemed to have been some question as to whether or not Marshall was actually killed by coming in contact with the semaphore post. There was no evidence offered showing any blow to any part of his body which might have been caused by striking the semaphore post. Between the first and the second trial the body of Marshall was exhumed by Dr. Powe, who performed an autopsy. The skull was removed and actually produced in Court. The back of the head was crushed in, its condition indicating that it had received a terrific blow near the place it joined with the spine. The neck was broken and the head was "disarticulated" from the spine. This new evidence was important to the plaintiff because it showed that the semaphore was struck and had blood upon it as well as other marks and that the skull of the deceased received a terrific blow at the base of it sufficient to crush it in and sever the head from the spine. All doubt was removed as to whether Marshall was actually killed by contact with the semaphore post.

The exceptions of the defendant are five in number, which will be taken up in their order.

Exception 1 alleges error on the part of the Circuit ■ Judge in admitting in the evidence, over the objection of the defendant, the seventh paragraph of the defendant's answer set forth *supra.*

In the consideration of this exception it is well to note that the answer of the defendant was not a general denial but was a qualified denial. The second paragraph of the answer states: "It denies each and every other allegation in said complaint not hereinabove or hereinafter specifically admitted." It will be seen from the wording of the paragraph of the answer and a consideration of the decisions of this Court that the answer was *not a general denial* under the rule laid down by this Court, Judge Cothran speaking, in the case of *Blake v. Southern Railway,* 126 S. C., 407, 120 S. E., 360, 361. The Court there said: "The so-called general denial in the first defense is limited by its terms to such allegations as may not 'hereinafter be admitted'; those that are admitted, including the allegations of interstate employment, are excepted from the force of the general denial by its terms."

Nowhere in the answer of the defendant is it denied that the plaintiff's intestate came to his death while doing the things which were alleged in the complaint in part. In fact, the answer of the defendant expressly affirmed and admitted that he was killed, and then set forth in paragraph 7 and stated in what respects he was negligent and stated the facts upon which such conclusions were based.

It is true that where there is a general denial and afterwards inconsistent defenses are set up, this Court has held repeatedly that the facts stated in such inconsistent defenses are not substantive facts by way of admissions; but where the denial is qualified as it is here and admissions are made in the answer of the defendant which are not specifically denied in a denial, this Court has held that such admissions are

competent in evidence insofar as the same refer to facts and not legal conclusions. This is the rule laid down in the case of *McJimpsey v. Southern Railway,* 89 S. C., 122, 71 S. E., 42, where an answer somewhat similar in form to the answer here under consideration is construed. This rule has also been recognized in the Federal Court where it has been held that the scope and sufficiency of the pleadings are governed by the practice of the states in which the trial is held. *Glenn v. Sumner,* 132 U. S., 152, 10 S. Ct., 41, 33 L. Ed., 301. Following the decisions of both Federal and State Courts, the matters set up in an affirmative defense where there has been *no general denial,* but where the defendant has pleaded, denying only such matters as were not thereinafter specifically admitted, such admissions on the part of the defendant there may be offered in evidence by the plaintiff.

The second exception complains of error on the part of the Circuit Judge in refusing to charge as follows: "I charge you that the jury cannot consider the allegations of defendant's answer in regard to contributory negligence as evidence against it and that the statements in Paragraph 7 cannot be considered as evidence in the case."

This exception is disposed of by the disposition of Exception 1.

The third exception alleges error on the part of the Circuit Judge in refusing to direct a verdict for the defendant on the ground that no actionable negligence had been proven on the part of the defendant in the cause.

A careful analysis of the evidence is convincing that this exception cannot be sustained. It was shown that the base of the semaphore was four feet ten inches from the track, only ten inches more than the minimum allowed by the railroad commission; that when the train was running twenty or twenty-five miles an hour the car swayed from eight to twenty inches. Under the testimony the car projected beyond the track a distance of two feet four inches with the ladder

two and one-half inches more, making a total projection of two feet six and one-half inches; that when the car was at rest the clearance between the semaphore and the ladder was two feet and one-half inches; that the clearance when the car was moving at a rate of twenty or twenty-five miles per hour would be from one foot seven and one-half inches to seven and one-half inches. Taking into consideration the swaying, of course, and the thickness of a man's body, the jury could have well concluded that the semaphore was placed within an unsafe distance of a moving train.

This is distinguishable from the case of *Southern Pacific Co. v. Berkshire,* 254 U. S., 415, 41 S. Ct., 162, 65 L. Ed., 335, where the engineer was killed by being struck on the head by a mail crane while leaning out the window of his cab. The crane had been erected in accordance with the regulations of the post office department. The Court there stated that the decision was confined to the case of postal cranes. There are but a few postal cranes along the route of an engineer. At each one of them the train on occasions "snatches" mail and they are clearly visible and known to the engineer as he approaches them. It is as much his duty to know of the existence of the postal cranes as it is his duty to know of the existence of a crossing and an engineer assumes the risk of being struck by one of these cranes which he passes constantly. The case of a semaphore is entirely different, for who could expect a switchman or brakeman or trainman to know the exact location of these posts and boxes which are sometimes close together and which are placed at regular and irregular intervals all along the railroad right-of-way? The case of *Chesapeake & Ohio Railroad Co. v. Leitch,* 276 U. S., 429, 48 S. Ct., 336, 72 L. Ed., 638, is another case involving a mail crane and follows under the same proposition as announced in the *Berkshire case.*

It might be well here to consider also that if a mail crane was put further back that it would be impossible for it to perform the functions for which it is intended, to wit,

"snatch" the mail from the mail cars. The mail crane must of necessity be in close proximity of the right-of-way, and it would be impossible for the railroad company to place it in any other position and in addition would be in direct violation of the postal regulations.

In the absence of proof that it was fully known and appreciated by him, we do not think that the deceased assumed, as a matter of law, such an extraordinary risk as this, a risk which the railroad company could have by due care avoided.

The defendant company invokes the order of the railroad commission in substantiation of its position with reference to the placing of the semaphore post. These regulations are not conclusive for the reason that they merely state the minimum distance which obstructions are allowed to be placed from the outer edge of the rail, whereas the postal regulations state the exact distance that a mail crane must be placed. There was nothing to prevent the defendant from placing the semaphore post further back if it knew or should have known that it was dangerous in the position which it was.

This also disposes of the fourth exception as to the assumption of risk.

The fifth exception alleges error in the refusal of the Circuit Judge to direct a verdict for the defendant on the ground that there was no evidence showing how the deceased came to his death, or as to the proximate cause thereof.

There are very few cases where a trainman is killed that can be proven except by circumstantial evidence. Very seldom is more than one man sent to perform a particular duty on the train, and if he is killed there is usually no living eye-witness to testify, and only the mute, unmovable circumstances can be adduced to show the cause and manner of his death. In the consideration of this matter it must be kept in mind that the degree of proof required of circumstantial evidence is not and should not be as great

in civil cases as in criminal cases. In criminal cases the presumption of innocence arises in favor of the defendant, and the circumstances must be of such force and character as to convince the jury beyond a reasonable doubt of the guilt of the accused. In civil cases where there is no presumption and where the proof merely has to be by the preponderance or greater weight of the evidence, it would be harsh and unjust to hold that the criminal circumstantial rule should be invoked. The weight to be given to the circumstances should be determined by the jury, and if from that weight they determine that the plaintiff has proven his case by the preponderance of the evidence, such finding should not be disturbed.

Fortunately for the plaintiff in this case, the circumstances are so many and so well knit together that a Judge would be required to submit the facts and circumstances to a jury even in a criminal case. We have a strong young man twenty-five years of age, healthy and able-bodied, in good health and apparent good spirits at the beginning of the trip with no known physical infirmity or defect; he is found dead beside the railroad track a few moments after having been seen alive by his companions. The dew on the ground is disturbed, the semaphore post shows unmistakable evidence of having been struck and there is evidence of human blood upon it; the skull of the deceased is found crushed, evidently from a lick of some terrific force. This tends to establish the rate of speed of the train, the fact that the post was too close to the track, that the deceased was on the side of the car riding where he had a right to ride and where his duty often called him to ride and at a place provided for him to ride upon, that the cars were swaying, and that his head came into collision with the semaphore post with a terrific blow and caused him to be killed. Foggy and dark, the eye of man could not see and the eye of God will not disclose the exact manner of his death, but these mute and silent circumstances, unchanged

and unchangeable, speak silently of the manner and circumstances thereof.

This case is a much stronger case than the case of *Chicago, M. & St. P. R. Co. v. Coogan,* 271 U. S., 472, 46 S. Ct., 564, 70 L. Ed., 1041. In the *Coogan case* the deceased was found near the west end of the second car from the caboose, lying parallel with the track outside the south rail and on or at the ends of the ties. There were indications to show that he had been between the rails; that he had been run over by the east truck of the car next to the cab; that his left leg and arm had been crushed between the wheel and the rail and that his body had been dragged about fifteen feet.

The theory of the plaintiff was that Coogan stepped between the rails with his right foot, leaving his left foot outside the south rail between the south rail and a certain pipe line; that he stooped to raise the air hose, his left foot slipping backwards under the bent pipe; that before he could make the coupling the car started backwards to clear the switch; and that as he attempted to straighten up his left foot was caught under the pipe and he was forced backward, run over, and killed. The sole ground of negligence was the presence of the bent pipe along the track of the defendant. Coogan's shoes were removed from his feet and placed in a garage where they remained for a number of days before they were examined. The condition of the left shoe before the accident was not known and several days afterwards a rounding depression was noticed on the counter of the shoe. There was no evidence as to the condition of the shoe before the accident. There was no evidence that the shoe had been kept in the same condition after the accident. Assuming that the depression in the shoe counter was made by contact with the bent pipe, there was nothing to indicate that it was made before or after he was knocked down by the train. There was nothing to indicate whether the depression was not made some time before. Suppose the shoe had been torn, the foot had been lacerated, and on the pipe had been

found leather from the shoe and blood from the foot, the case would not have then been as strong as the case here under consideration.

The present case was reversed and remanded for a new trial by the United States Supreme Court under the authority of the following cases: *Chicago, M. & St. P. R. Co. v. Coogan, supra; Southern Pac. Co. v. Berkshire & Chesapeake & Ohio Co. v. Leitch, supra; Gulf, C. & S. F. R. Co. v. Mosler,* 275 U. S., 133, 48 S. Ct., 49, 72 L. Ed., 200.

The first case, Coogan, is on the question of the quantity and quality of the evidence and, as I have attempted to demonstrate heretofore, the case now under consideration is a much stronger case than the *Coogan case.* In the *Coogan case* there was presumption built upon presumption, supposition upon supposition; at best the case was only a good theory and not sustained by any positive facts.

The *Berkshire case* and the *Leitch case* are both on the question of assumption of risk and, as I have attempted to demonstrate, do not control this case. It is well to note here also that at the former trial, *Tyner v. A. C. L. R. Co., supra,* there was a question as to the charge upon assumption of risk. This is disposed of at pages 105-108 inclusive of 149 S. C., 146 S. E., 669, 670. There is no question here as to any error in the charge with reference to assumption of risk, and if the United States Supreme Court intended to direct a verdict on the ground of assumption of risk it is *not so stated in its decision.* I cannot but feel that the United States Supreme Court intended just what was written in the decision, to remand the case for a new trial on this ground.

The *Mosler case* is with reference to the measure of damages and as to error in the charge in the *Tyner case.* There is no question that under the federal rule, as applied to the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59), the Judge in the first trial clearly failed to charge the proper measure of damages. The decision of the United

States Supreme Court was that the case should be reversed and remanded for a new trial, having in mind the questions which are decided in the cases cited.

In passing it might be well to consider for a moment the reason for the passage of the Federal Employers' Liability Act. It was passed for the purpose of enlarging, not limiting the rights of the employees to recover against railroad companies when engaged in interstate commerce. Numbers of rights were conferred by this Act of Congress which did not exist prior to its passage. The plaintiff was permitted to bring his suit in the State Courts and not to be subject to removal to the Federal Court. He was to be relieved of the burden of being carried out of the county of his choice into the Federal Court where it would be both inconvenient and expensive to carry on the litigation. The doctrine of fellow servant was abolished entirely by the terms of the Act itself. Contributory negligence ceased to be a complete defense as it is under the South Carolina law but could be considered in diminution of damages only under the standard fixed by Congress in the trial of these cases. The suit was limited in favor of those who were dependent upon the deceased or the injured person for support, clearly indicating that it was the purpose of Congress to grant that broad and comprehensive relief to the dependents of one killed or injured in the service of his employer which was not permitted formerly under the state and federal decisions. It was to be a shield to the working man to give him additional security that upon being killed in the line of his duties his dependents would not suffer by reason of it. The amount of recovery was limited to actual damages so that the scope of the Act could not be enlarged by capricious or prejudiced jurors. The appeal was made ultimately to the highest Court in the land so that this great judicial body could overlook and supervise the operation of the Act in accordance with the intention of its framers. It was and is one of the most progressive steps in legislation of

the twentieth century and stands today a monument to the progressive and humanitarian spirit which is characteristic of this new century. Thousands of men have been benefited by its terms and thousands more will be benefited by its terms in the future. I feel that a construction should be given, broad and comprehensive, to carry out the real intent of the framers of the Act and yet circumscribe it with such rules of law as will amply protect the employer under its terms.

All of the exceptions are therefore overruled, and the case is affirmed.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE COTHRAN (dissenting) : Upon the former trial of the case, the defendant moved for a directed verdict upon the ground that the evidence as to the cause of decedent's death was wholly speculative and insufficient to show the proximate cause of his death.

In overruling the exceptions raising this issue, the Court in the opinion reported in 149 S. C., 89, 146 S. E., 663, 672, made the following observations, in which I have italicized the evidence which appeared in that trial *and which did not appear in this:*

"We have already called attention to some of the evidence given in this case; we do not deem it necessary to review the entire testimony. Much of the evidence was circumstantial, but, taken as a whole, it was amply sufficient to carry the case to the jury. As stated, the evidence tended to show that *the brakes on one of the cars were defective,* a condition sufficiently dangerous to have caused a wreck; that *this condition was discovered by the switchman, Marshall, who called the conductor's attention to it; that the train was stopped, and these two men attempted to rectify this defective condition; that the conductor did rectify same, as he thought, and went back to a place of safety; that the switchman did not return at once to the top of the car where he generally*

*rode, but, inferentially, remained on the ladder attached to the side of the box car for the purpose of further watching and noting whether the brakes would work properly or continue to* 'stick'; *and that the train of cars,* running at a rate of from 20 to 25 miles per hour, which caused a sway of the empty box cars from 8 to 20 inches, *passed the signal device located on the roadbed of the appellant while Marshall was on the ladder,* and that thus he came in contact with the semaphore and was knocked from the ladder and killed.

\* \* \*

"As we have already pointed out, *the conductor testified that the last time he saw Marshall, which was before the semaphore was reached, he was going up the ladder,* and that he was found dead some feet from the semaphore. The testimony further tended to show that the dew had been brushed from the base of the semaphore, apparently through contact with some object. We think that the testimony, when considered as a whole, amply justified the jury in drawing the inference contended for by the respondent, that the decedent came to his death by reason of his being knocked from the ladder by the semaphore, and in drawing the further inference that, as the *switchman knew of the danger arising from the 'sticking' of the brakes, he had remained on the ladder for a few moments after the cars started in order to see whether the defective condition had been remedied, and whether there was any further danger from this cause, and that in so doing he was acting within the scope of his duties.*"

An examination of the record will show that not one of the facts above italicized, upon which this Court relied in its opinion, was presented upon the trial, from the result of which this appeal comes.

The plaintiff, however, did present the testimony of C. C. Tyner, a brother-in-law of the deceased, to the effect that about 1:30 p. m. of the day of the accident (it having occurred in the early hours of the morning of that day, before daylight), upon an examination of the semaphore, he dis-

covered about four feet from the base that something had apparently wiped the smoke and soot from the semaphore and that about six or seven inches higher up there were apparently blood stains on the north side of the semaphore casing; that he examined the body of the deceased and found a pad on the back of the head and two blood clots on each of the pads; that the head was crushed in and soft.

The plaintiff, a physician, also testified that he assisted in exhuming the body between the two trials, presented the skull in evidence and testified that the back of the head was crushed in as if from a severe blow.

These witnesses were not produced and examined at the first trial; and it is contended that their testimony, complementary to the circumstances above indicated in italics, made it an issue of fact for the jury whether the death of the deceased was caused in the manner alleged. The vice in this contention is that *the circumstances referred to were not in evidence upon the second trial.*

The theory of the plaintiff's case, as indicated by the allegations of the complaint and by the argument of counsel, is as follows:

1. That the brakes on a certain car were defective.

2. That the train was stopped to repair the defect.

3. That as the train moved off the deceased mounted a ladder on the side of a box car to see that the brakes had been properly repaired.

4. That as the train passed the semaphore the deceased came in contact with the semaphore and was killed.

As to the first three elements of the theory there is not a particle of evidence; as to the fourth, there is none other than the facts that the body of the switchman was found alongside of the track, some twenty-five feet south of the semaphore, the back of his head crushed in as from a severe blow; that there were apparently (discovered some twelve hours in the day) blood stains upon the north side of the semaphore *casing,* about four and one-half feet from the

base; and that the dew, dust, or soot had been wiped off by *something* at a point four feet from the base.

It does not clearly appear that the spots upon the semaphore were blood stains; in fact, it is inconceivable that if, as *theorized,* the deceased, as the train moved off, climbed upon the ladder of a box car to watch the brakes which were defective and had been repaired, and was struck in the back of the head by the semaphore, blood would so quickly have spurted out and stained the semaphore; the removal of the dew, dust, or soot can mean nothing.

There is not a particle of evidence that he was on a train or car at or shortly before the time he was killed, or was on the top or side of a moving car, or on a ladder or in any other position, moving or standing, where he could have been struck by the semaphore.

In connection with this phase of the case it is interesting to note the case of *Chicago, M. & St. P. R. Co. v. Coogan,* 271 U. S., 472, 46 S. Ct., 564, 70 L. Ed., 1041, one of the cases cited by the Supreme Court of the United States upon the authority of which the judgment of this Court was reversed. The Court must have cited it in sustaining the defendant's position that there was not sufficient evidence that the deceased met his death by means of some instrumentality of the railroad company, as that was the main point decided in the *Coogan case.*

In that case, quoting from the opinion: "At the close of all the evidence, petitioner moved the Court to direct a verdict in its favor on the ground, among others, that respondent had failed to prove any actionable negligence on the part of petitioner, and that any verdict for respondent would be based upon speculation and conjecture."

The motion was denied; a verdict for the plaintiff followed which was affirmed by the Supreme Court of Minnesota (160 Minn., 411, 200 N. W., 477), and upon certiorari was reversed by the Supreme Court of the United States upon the ground taken by the railroad company, that

"the evidence is not sufficient to sustain a finding that any negligence on its part caused or contributed to cause the death"; the Court holding: "The kind or amount of evidence required to establish it is not subject to the control of the several states. This Court will examine the record, and if it is found that, as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed"; a rule recognized by this Court in the case of *Shiver v. R. Co.*, 155 S. C., 531, 152 S. E., 717, 721, opinion filed April 3, 1930, and in which the Court said: "The evidence as to his death, and as to the cause of it, was speculative, and it was not sufficient to show the proximate cause thereof."

The facts of the *Coogan case* are sufficiently detailed in the opinion of Mr. Justice Graydon and I need not repeat them. In fine, the Court held that there was a hiatus in the proof, in that it did not appear that the foot of the deceased was caught in the admittedly defective pipe line, the Court saying: "As there is no direct evidence, it is necessary to determine whether the circumstances are sufficient to warrant a finding of that fact. Whenever circumstantial evidence is relied on to prove a fact, the circumstances must be proved and not themselves presumed."

To sustain the plaintiff's theory that the deceased came in contact with the semaphore, the circumstances, of which there is not a particle of evidence, must be presumed; that the brakes were defective; that the train was stopped to repair them; that the deceased climbed the ladder and was leaning out in his investigation of the brakes after the train started. Even with some if not all of these circumstances appearing before the Supreme Court of the United States, it cited the *Coogan case* in support of its reversal. With how much more reason would it do so in the absence, upon the present trial, of every circumstance except that the deceased might have received his wound under the circum-

stances stated which only exist by unsupported presumption or assumption?

In *Northern R. Co. v. Page,* 274 U. S., 65, 47 S. Ct., 491, 493, 71 L. Ed., 929, the Court held: "Under familiar rules, plaintiff was entitled to prevail if the evidence and the inferences that a jury might legitimately draw from it were fairly and reasonably sufficient to warrant a finding in his favor. Otherwise the judgment must be for defendant. (Citing the *Coogan case.*) The verdict cannot be sustained if essential facts are left in the realm of conjecture and speculation." Citing *St. Louis-San Francisco R. Co. v. Mills,* 271 U. S., 347, 46 S. Ct., 520, 70 L. Ed., 979.

It is insisted on behalf of the plaintiff, however, that the seventh paragraph of the defendant's answer, in which its plea of contributory negligence was amplified, and which was admitted in evidence by the presiding Judge over the defendant's objection, contains specific allegations to the effect that the deceased was ordered by the conductor to ascend the ladder on the side of the car and take a position upon the roof; that instead of doing so he remained upon the ladder and leant outward from it so far as to bring his body in contact with the semaphore, which was erected even a greater distance from the track than is required by the regulations of the state railroad commission; and that these allegations supplied the hiatus in the evidence which the defendant now asserts to exist.

It is conceded in the opinion of Mr. Justice Graydon that where the defendant sets up a general denial to the allegations of the complaint and follows it with an affirmative defense containing allegations of fact inconsistent with the general denial, in the nature of admissions of facts stated in the complaint, such allegations of fact are not admissible in evidence on behalf of the plaintiff to sustain the allegations of the complaint; he insists, however, that where the denial is qualified as he claims it to be in the present case, such allegations of facts are admissible for the purpose stated.

In support of this proposition the learned justice cites two
South Carolina cases which I do not think at all sustain the
proposition, namely, *McJimpsey v. Southern Ry.*, 89 S. C.,
122, 71 S. E., 42, and *Blake v. Southern Ry.*, 126 S. C., 407,
120 S. E., 360.

In the *McJimpsey case* the action was against a certain
railroad company which had leased its property to another
company upon a cause of action which arose in North Caro-
lina, based upon the negligence of the lessee company to-
ward a passenger. The lessor company, the defendant in
the case, moved for a nonsuit upon the ground that there was
no evidence tending to show any delict upon its part and the
alleged injury having occurred in North Carolina it did
not appear that under the laws of that State the lessor com-
pany was liable for the delicts of the lessee company. But
in the answer of the lessor company containing allegations
intended to show that the injury was due solely to the negli-
gence of the passenger, it was admitted that the passenger
at the time of his injury was on a train of the lessor com-
pany. This allegation had followed a paragraph in the
answer which denied "every material allegation of the com-
plaint." The Court held it was doubtful whether this con-
stituted a good general denial because of the qualification
leaving it uncertain what the defendant considered material;
but passing that by as no motion to make the answer definite
was made, the allegation in the answer that the occurrence
was upon a car of the defendant was considered an admis-
sion on the part of the defendant.

It is apparent that the admission in the answer was not
made in the statement of an affirmative defense.

In the *Blake case* the situation was entirely different as
appears from the syllabus which correctly reflects the con-
clusion of the Court. It is there stated that where in an
action under the Federal Employers' Liability Act (45
U. S. C. A., §§ 51-59) the plaintiff alleged the interstate em-
ployment of the plaintiff and the defendant's general denial

was limited to such allegations as may not thereinafter be admitted, and the defendant's second defense specifically stated that the plaintiff was employed by the defendant in interstate commerce, the interstate employment was an admitted fact.

In Bliss on Code Pleading (3d Ed.), § 331, it is stated that while there is criticism of an answer which denies each and every allegation of the complaint not expressly admitted or denied, the defect does not exclude evidence supporting the denial, but that the remedy of the plaintiff is to require the answer made more definite. The author further states that there can be no valid objection to an admission of certain facts and a general denial of all others, provided it distinctly appears what facts are admitted and what denied.

In *Bessemer Co. v. Woolley*, 32 Colo., 437, 76 P., 1053, 105 Am. St. Rep., 91, a denial of each and every allegation of the complaint not theretofore specifically admitted was held good as a general denial.

So in *Comes v. R. Co.*, 78 Iowa, 391, 43 N. W., 235, where the denial was of each and every other allegation contained in said petition not hereinbefore admitted.

So in *Calhoun v. Hallen*, 25 Hun. (N. Y.), 155, where the denial was of each and every allegation set forth in the complaint except as herein admitted, qualified or explained.

So in *Reuscher v. Hudson*, 4 Ohio Dec., 291, where the denial was of each and every other allegation and averment in said cross petition contained except as hereinbefore expressly admitted or denied.

So in *Pittenger v. Association*, 15 App. Div., 26, 44 N. Y. S., 124, where the denial was of each and every allegation in said complaint contained not hereinbefore or hereinafter admitted, denied, or controverted.

So in *Lueddemann v. Rudolf*, 79 Or., 249, 154 P., 116, 155 P., 172, where the denial was except as hereinafter admitted, stated or qualified the defendant denies each and

every allegation within the amended complaint of the plaintiffs contained.

So in *Childers v. Bank,* 147 Ind., 430, 46 N. E., 825, where the paragraph of an answer denied every allegation of the complaint not admitted in such paragraph.

Under these authorities I do not think that there can be a question but that the denial in the present case was a general denial, subject perhaps to a motion by the plaintiff to make it more definite and certain, in the absence of which it will prevent the admission of the defendant in his affirmative defense being used against him in support of the plaintiff's case. This seems to be the rule in *Stanley v. Shoolbred,* 25 S. C., 181; *Brock v. Nelson,* 29 S. C., 49, 6 S. E., 899; *Gilreath v. Furman,* 57 S. C., 289, 35 S. E., 516; *Charping v. Toxaway,* 70 S. C., 470, 50 S. E., 186; *Hickson v. Early,* 62 S. C., 42, 39 S. E., 782; *Glenn v. Sumner,* 132 U. S., 152, 10 S. Ct., 41, 33 L. Ed., 301.

In the case of *Glenn v. Sumner,* 132 U. S., 152, 10 S. Ct., 41, 33 L. Ed., 301, the Court said: "This explicit finding cannot be controlled by statements of fact in those parts of the answer which set up as independent defenses matters in avoidance, or in a bill of exceptions relating to one of those defenses only. Such statements, made for the purpose of presenting the issue to which they relate, are not evidence upon any other issue in the same record. As held by Chief Justice Marshall, sitting in the Circuit Court for the district of North Carolina, where the law authorizes a defendant to plead several pleas, he may use each plea in his defense, and the admissions unavoidably contained in one cannot be used against him in another."

In *Hickson v. Early,* 62 S. C., 42, 39 S. E., 782, 785, the Court citing the *Glenn v. Summer case* said: "The same principle would, of course, apply to a case in which separate and distinct defenses are set up in the answer, and there is a demurrer to two or more of the several defenses, which is the case here, see *Stanley v. Shoolbred,* 25 S. C., 181, where

it was held that where the defendant pleads a general denial, and a further defense by way of confession and avoidance, the admissions made in the latter defense cannot be used by plaintiff to establish the issues raised by the general denial."

In *Lee Line Steamers v. Robinson* (C. C. A.), 218 F., 559, 562, L. R. A., 1916-C, 358, the Court, also citing *Glenn v. Sumner,* said: "It is true that, where the law authorizes a defendant to set up several pleas, he may use each plea in his defense, and the admissions unavoidably contained in one cannot be used against him in another."

In *Smith v. Gale,* 144 U. S., 509, 12 S. Ct., 674, 678, 36 L. Ed., 521, the Court, also citing *Glenn v. Sumner,* said: "It is true that when a general denial is pleaded in connection with a special defense of new matter, or two inconsistent defenses are set up, the admissions in the one canot be used to destroy the effect of the other."

In *Wyoming Co. v. Buffalo Co.,* 25 Wyo., 158, 166 P., 391, 392, it was held, quoting syllabus: "Admissions contained in a defense of new matter requisite for the introduction of such new matter in defense are not inconsistent with a denial pleaded in a separate defense in the same answer, and cannot be used to defeat such denial; hence a defendant may both deny and avoid, although the avoidance is a tacit admission of what is denied."

In *Rudd v. Dewey,* 121 Iowa, 454, 96 N. W., 973, 974, the Court said: "But even in states where inconsistent defenses are not allowed, the remedy is by motion to strike or to require an election; and, if the two defenses are allowed to stand, the colorable confession in one division, which is introduced or implied in order to support matter in avoidance, does not waive the general denial pleaded in another."

In 2 Enc. Law & Practice it is said: "While there is some conflict on the question, the great weight of authority, both at common law and under the statutes, favors the doctrine that, where several inconsistent pleas are filed, the admissions in one are not competent as evidence to rebut a repugnant

averment in another." The authorities upon which the author arrives at this conclusion are cited in the notes.

In 1 Elliott on Evidence, § 236, it is stated: "There is much reason in support of the view that where the law authorizes a party to plead in his way, as, for instance, where it authorizes him to set up independent and even inconsistent defenses in different paragraphs of answer, the statements in a particular paragraph are made for the purpose of presenting the issue to which they relate, and no other, and to permit them to be used against the pleader on another issue would deprive him of his denials or at least make it dangerous for him to do what the law authorizes him to do. He may, for instance, plead by way of denial in one paragraph and by way of confession and avoidance in another, and it would seem unjust to permit his unavoidable and, in a sense, conditional admissions in the latter paragraph to be taken as admissions upon the issue raised by the denial. This seems to be the view taken by most of the Courts by which the question has been expressly decided."

In Pomeroy's Code Remedies (3d Ed.), § 724, the rule is stated: "When a denial is pleaded in connection with a defense of new matter, or two defenses of new matter are set up, the admission in the one can never be used to destroy the effect of the other. The concessions of a defense by way of confession and avoidance do not obviate the necessity of proving the averments contradicted by the denial. This rule is universal. Even in those states where inconsistent defenses are not permitted to stand, the remedy is by striking out, or by compelling an election, and not by using the admissions of one to destroy the issues raised by the other."

See extended note 14 A. L. R., 80.

I think therefore that the admission in the defense of contributory negligence can add nothing to supply the fatal hiatus in the evidence, and that clearly the presiding Judge was in error in admitting the seventh paragraph of the answer in evidence. In passing, it appears anomalous to

practically strike the defense of contributory negligence from the answer and allow the use of a part of it as an admission of a material fact which the plaintiff was obliged to prove.

But assuming for the moment that the evidence shows that the train was equipped with a defective brake in one of the cars; that before reaching the semaphore the train was stopped and the brake repaired; that the deceased was not entirely satisfied with the efficiency of the repairs and mounted the ladder to observe the action of the brake after the train started; that while engaged in that duty he leant over far enough to come in contact with the semaphore and was killed—I think, that his death cannot be charged to the railroad company.

It is conceded that the semaphore was constructed at a greater distance from the nearest rail than four feet, the minimum distance fixed by the order of the railroad commission which had jurisdiction of such a regulation.

It has been consistently and properly held by this Court that the failure of a railroad company to comply with a regulatory statute in the operation of its trains, the signaling statute for instance, is negligence *per se* and in the *McBride case,* 140 S. C., 260, 138 S. E., 803, it was decided, not only this, but that it created a presumption that the failure was the proximate cause (a conclusion with which I did not agree in that case). It would appear logical and just therefore that when the railroad company complied with the statute or authorized regulation, it should be entitled to a similar presumption of due care.

I do not contend that the railroad company, in every instance, is absolved by showing compliance with such a regulation; circumstances may be presented which call for additional precautions, and I think that such has been the holding of this Court. At any rate, such circumstances must be made to appear.

It is declared in the opinion of Mr. Justice Graydon that there was evidence from which the jury would have

been justified in concluding that the semaphore was placed "within an unsafe distance of a moving train." This declaration is based upon the theory that the clearance between the side of a car standing at rest upon the track opposite the semaphore was thirty inches; that this clearance was reduced by the thickness of the ladder, two and one-half inches, leaving twenty-seven and one-half inches; and that it was further reduced by the swaying of a car from side to side, in a train running at the rate of twenty-five miles an hour from eight to twenty inches; that if the swaying was eight inches, the clearance would have been nineteen and one-half inches; if twenty, seven and one-half inches; and that considering the thickness of a man's body, the semaphore was placed too close to the track.

As applied to this particular case, the theory is based upon several assumptions, none of which appear in the evidence; that the deceased was upon the ladder; that the train was running twenty-five miles an hour; and that the sway of the passing car was so many inches.

There is no evidence how far the train stopped north of the semaphore, if it stopped at all; there is no evidence where the deceased mounted the ladder, if indeed he mounted it at all; there is no evidence that between the assumed stopping and the assumed mounting, the speed of the train had reached 25 miles an hour; there is no evidence as to how great the swaying of the car was or that the swaying, alternately as it appears, was toward the semaphore. It is all speculation and conjecture.

It is difficult if not impossible to differentiate the facts and conclusions which I think should be drawn in this case, from those in the case of *Davis v. R. Co.*, 21 S. C., 93, which has been cited in many cases with approval by this Court, mainly upon other points. There the deceased was upon top of a car with a lantern flagging an approaching train; the cup of his lantern dropped out and he descended into the caboose to get another lantern; supplying himself

with it he attempted by means of a ladder on the side of the caboose to return to his post on top; as he was ascending the ladder he was struck by the timbers of a water tank and killed. There was evidence tending to show that the timbers were too close to the track, but that a person might ascend it, hand over hand, with safety. A nonsuit was ordered on circuit and affirmed by the Supreme Court. The nonsuit was sustainable and was sustained upon this ground:

"Now in this case the deceased was knocked from the train and killed while he was upon the ladder on the outside of the car when the train was passing this structure, and, it is true, that such an accident could not have happened had the tank not been located as it was. But whether the danger of such an accident happening at that point and in that way was of such a character as to have required the company to locate this tank a few inches back, was a material fact in determining whether due care had been exercised, and consequently a material fact on the question of negligence. In locating this tank, did ordinary or reasonable care or foresight demand that the company should foreknow, or even apprehend, that it was probable, remote or otherwise, that the lantern of a brakeman who was posted on the top of the conductor's cab, and required by the rules of the company to remain there, would go out just as the train was approaching this point, and at the moment that it swept by, that this brakeman, after descending to the cab for a second lantern, would be on the ladder returning to his position?·

"It seems to us that these facts, or at least some facts showing the character of care that should have been bestowed, and that it was absent, the danger to be apprehended, and that it was not provided against, or something of that kind, were material facts on the question of negligence before that question could be properly submitted to a jury. But we find no testimony in the record directed to these points. The substance of the entire testimony is, that the tank was close enough to the track to strike one who happened to be

on the outside of the car when the train was passing that point; that the deceased was on the outside at this precise moment and was killed; but there was no testimony that in locating this tank so near, the company, in view of such a conjuncture of circumstances, or of any danger resulting therefrom, failed to exercise reasonable care, such care as men ordinarily exercise in the conduct of business. In the absence of such testimony the non-suit was not without authority of law."

If it had appeared in that case that there was reasonable ground for the company to have apprehended that the deceased would make use of the ladder under such extraordinary circumstances, doubtless the non-suit would not have been sustained. The facts in the case at bar parallel the conditions presented in the *Davis case*. Assuming what I do not think there is a particle of evidence of, that the train stopped, that the switchman mounted the ladder and was knocked off, it is inconceivable that the company could reasonably have apprehended that the conditions which are claimed to have caused the accident would have existed at that particular time and place. It is not contended that the switchman was using the ladder for the purpose for which it manifestly was intended, to ascend to the top of the car, but that he was using it for an inspection of the brakes upon a moving train. To hold the company liable it seems to me that the Court must hold that it must have anticipated that the train would stop to repair a defective brake; that after it had been repaired the switchman would mount the ladder, hold on to it and lean over to inspect the repaired brake, and that just at the moment that the particular car would reach the semaphore, the car, alternately swaying from side to side would sway toward the semaphore. It is conceded that for the purpose of ascending the ladder under normal conditions, there was abundant clearance between the track and the semaphore.

In *Philadelphia & R. R. Co. v. Thirouin* (C. C. A.), 9 F. (2d), 856, 857, it was claimed that decedent was crushed

between the girder of a bridge and a train on which he was riding at night, which had only eleven and one-half inches clearance above the train. Thirouin went back on the train before reaching the bridge to investigate sparks which were flying from the train and it was plaintiff's theory (just as it is plaintiff's theory in the present case) that he was leaning out looking for sparks and was struck by the bridge. The Court reversing a judgment for the plaintiff said: "It follows that the clearance was sufficient for the purpose for which it was provided and insufficient and highly dangerous for personal use. Against the dangers of personal use, however, the railroad company was required to afford protection only to those of its servants whose duties called them there. * * * We have not found, nor has our attention been directed to, any testimony in the record showing or intimating that Thirouin's duties required him to go within the clearance, or to the end of the girder, or upon the bridge. It is argued that in searching for the trouble he may have leaned out beyond the car just as it came to the end of the bridge and that he may have leaned so far out that he was struck and swept off the train by the center girder. That may be true, but there is no evidence to prove it. Blood on one end of a girder and a foot at the other end of the same girder and the body on the opposite side of the track against another girder open a wide field for speculation as to how the accident happened and leave nothing certain except the fact of injury and death."

See also *Reading Co. v. Boyer* (C. C. A.), 6 F. (2d), 185; *Bennett v. Washington Terminal Co.,* 55 App. D. C., 111, 2 F. (2d), 913; *Atlantic Coast Line R. Co. v. Wimberley,* 273 U. S., 673, 47 S. Ct., 475, 71 L. Ed., 833.

The latter case involved the death of a brakeman who went out of the cab along the running board and down on the cow catcher to get off the train while it was slowly moving in the nighttime, to throw a switch. He was found dead under the train some distance before reaching the switch.

The North Carolina Supreme Court (190 N. C., 444, 130 S. E., 116), found ample evidence of liability, but its judgment was reversed by the United States Supreme Court on the authority of the *Coogan case* and other cases.

The case of *Southern Pac. Co. v. Berkshire*, 254 U. S., 415, 41 S. Ct., 162, 65 L. Ed., 335, which also was among the cases upon the authority of which the former judgment of this Court in *Tyner v. Atlantic Coast Line R. Co.*, 149 S. C., 89, 146 S. E., 663, was reversed by the Supreme Court of the United States, can only be applicable to the case at bar by interpreting it as conclusive of the issues presented for the second time in the present appeal. In that case the deceased engineer, leaning out of the side window of his cab, in the discharge of his duty to see the condition of a hot driving-pin, was struck on the head by the end of the horizontally extended arm of a mail crane and instantly killed. The syllabus of the case is as follows: "The installation of railway mail cranes so close to the track that the arm of a crane when extended comes as near as 14 inches to the window of an engine cab, thus becoming a source of danger to the engineer while in performance of his duty, is not negligence upon the part of the railroad company as respects its employees, when such placing of the cranes is uniform along the railroad, and done by direction of the Post Office Department pursuant to a plan it found necessary in handling the mails."

The clearance in the case at bar, not deducting anything from the claimed swaying of the car, was twenty-seven and one-half inches while that in the *Berkshire case* was only fourteen.

The *Berkshire case* was reaffirmed in the case of *Chesapeake & O. R. Co. v. Leitch*, 276 U. S., 429, 48 S. Ct., 336, 72 L. Ed., 638, which also was among the cases upon the authority of which the former judgment of this Court was reversed by the Supreme Court of the United States. In it the clearance of the mail crane was 10 inches.

It is mildly suggested that the fact that both the *Berkshire case* and the *Leitch case* involved postal cranes and not semaphores creates a distinction between them and the case at bar. All three involve the same question of the erection and maintenance of structures near the track and it is not perceived whether the structure is a mail crane or a semaphore can make the least possible difference.

As both cases were cited as authority for reversal, it appears without doubt that the principles announced were intended to be applied to the case then under consideration.

The case of *Toledo, St. L. & W. R. Co. v. Allen*, 276 U. S., 165, 48 S. Ct., 215, 217, 72 L. Ed., 513, is pertinent. It involved injury to a yard employee who was struck and injured by a shunted car while between the tracks. One ground of negligence alleged and submitted was that the tracks were so close together that an employee between cars on the two tracks was in danger of being struck. On this question the United States Supreme Court said: "The rule of law which holds the employer to ordinary care to provide his employees a reasonably safe place in which to work did not impose upon defendant an obligation to adopt or maintain any particular standard for the spacing or construction of its tracks and yards. [Citing cases.] Carriers, like other employers, have much freedom of choice in providing facilities and places for the use of their employees. Courts will not prescribe the space to be maintained between tracks in switching yards, nor leave such engineering questions to the uncertain and varying opinions of juries. [Citing cases.] Having regard to plaintiff's knowledge of the situation, it is clear that the evidence when taken most favorably to him is not sufficient to warrant a finding that defendant failed in any duty owed him in respect of the space between the tracks. * * * The Court erred in submitting that question to the jury."

Upon the issue of assumption of risk the undisputed evidence shows that decedent, Marshall, was an experienced railroad man and had worked in the Charleston yard as a

switchman three weeks at the time he was killed and for about three months before that time at the same place, and had also worked for appellant as switchman for about two years at Florence. Decedent, while working as a switchman, necessarily went out past these semaphores. There was testimony that all freight cars running at a speed of 20 to 25 miles an hour sway from side to side from ten to twenty inches, and further testimony that all railroad men know that freight cars sway from side to side in that way, and also know about semaphores being along the side of the track. Rule No. 706 of the railroad company, which was in force at the time decedent was killed, requires all employees to inform themselves respecting "the location of all *structures* or *abstructions* along the line which will not clear them when on the top or *sides of cars."*

In reversing the judgment of this Court and ordering a new trial, the United States Supreme Court cited, as one reason for its reversal, the case of *Chesapeake & O. R Co. v. Leitch,* 276 U. S., page 429, 48 S. Ct., 336, 72 L. Ed., 638. This case, as heretofore pointed out, was a mail crane case and was decided both on the ground of assumed risk, as well as lack of negligence. The facts on the question of assumed risk are not materially different on the present appeal from the facts on the last appeal, and the decision of the United States Supreme Court in reversing the judgment on the prior trial, on the authority of the *Leitch case* is conclusive on the present appeal that the decedent assumed the risk of injury, as a matter of law. We quote from the decision in the *Leitch case:*

"Of course it is answered that these general considerations should not exonerate the railroads from using such care as they can within the conditions. But it seems to us unjust to let the risk of a danger that in any event is imminent vary upon disputed evidence that the danger was brought an inch or two nearer than it would have been if a blueprint adopted for the whole line had been followed with a more precisely

mathematical accuracy. In the *Berkshire case* the testimony for the plaintiff left a distance of fourteen inches from the end of the crane to the car. Here the plaintiff's witness makes it ten.

"The witnesses for the petitioner with greater plausibility make it appreciably more. If there is to be a standard in these cases, and if, as decided, the general rule is that the engineer takes the risk, the railroad should not be made liable for this class of injury except where some unquestionable disregard of obvious precautions is shown."

The *Berkshire case* also was decided upon the issue of assumption of risk and, like the *Leitch case,* manifestly was intended to control the decision of the case.

For these reasons I think that the judgment should be reversed, and the case remanded for the entry of judgment for the defendant under Rule 27.