16085

McCREADY v. ATLANTIC COAST LINE R. CO.
(38 S. E. (2d) 193)

*Messrs. V. E. Phelps* and *Willcox, Hardee, Houck &*
*Palmer,* of Florence, for Appellant,

*Messrs. R. E. Whitehurst* and *Royall & Wright,* of Florence, for Respondent,

May 31, 1948.

FISHBURNE, J.: This action was commenced by the plaintiff to recover of the defendant damages for the total loss of a certain shipment of green beans alleged to have been caused by negligent refrigeration while enroute from Lake City, South Carolina, to Preston, Maryland. Upon trial the jury brought in a verdict for One Thousand Fifty-six and 00/100 ($1,056.00) Dollars in favor of the plaintiff, which was the alleged value of the property destroyed, and judg-

ment was awarded for this amount with legal interest. The defendant appeals from the judgment and order of the lower Court denying its motion for a directed verdict made upon the close of all the evidence. The exceptions likewise raise issues as to the correct measure of damages, and on the admission of certain evidence.

On June 1, 1944, the respondent bought on the Lake City market 640 one-bushel hampers of green beans, which he sold to H. B. Wright & Sons of Preston, Maryland, at One and 65/100 ($1.65) Dollars per bushel hamper, F. O. B. Lake City. The sale was to become effective upon delivery of the beans at Preston in good condition.

In accordance with the directions of respondent, the Atlantic Coast Line Railroad Company placed its refrigerator car MDT 3671 at 9:00 P. M., on June 1, 1944, on the siding at Lake City and the 640 one-bushel hampers of beans were loaded therein. The car was released the following day on June 2, 1944, at 12:00 o'clock noon and the appellant issued its uniform straight bill of lading therefor, showing consignment to H. B. Wright & Sons at Preston, Maryland, with standard refrigeration requested. The refrigerator car reached Preston four days later on June 6th and was placed on the private siding of H. B. Wright & Sons on that date at 11:30 o'clock A. M. Immediately, the consignee with Mr. D. W. Cartwright, local freight agent of the Pennsylvania Railroad, which was the terminal and delivering carrier, inspected the car. They found the ice bunkers located at each end entirely empty of ice, the ventilators were closed, and when the doors were opened smoke poured out of the car as from a fire. On examination it was discovered that the beans had turned brown and limp and that the baskets in which they were packed had started to turn dark and appeared to be charred. The whole shipment was worthless and was thereafter dumped in a neighboring field.

Claim was filed with the Pennsylvania Railroad, the delivering carrier, for One Thousand Fifty-six and 00/100

($1,056.00) Dollars, which claim was denied, and this suit followed against the Atlantic Coast Line Railroad Company, the initial carrier, under the Carmack Amendment, 49 U. S. C. A. § 20(11) (12).

Error is assigned because the lower court refused to direct a verdict in favor of the appellant, made on the ground that respondent produced no substantial proof that appellant failed to exercise ordinary care in the refrigeration of the beans in accordance with the shipper's directions, and also because the testimony as a whole showed that appellant had fully performed its transportation contract with respect to refrigeration and icing.

In *Wentworth Fruit Growers' Ass'n. v. American R. Exp. Co.*, 222 Mo. App. 1189, 1 S. W. (2d) 1028, 1029, where a shipment of. berries alleged to have been good when shipped was delivered in a deteriorated state, the Court held:

"Ordinarily when such proof is made by a shipper the burden is shifted to the carrier to explain or account for the damaged condition of the shipment or respond in damages; but if the shipper pleads specific negligence he cannot invoke the presumption arising from the damaged condition. In case of a plea of specific negligence the burden is on the shipper to prove the negligence alleged, and this burden does not shift."

We think the foregoing is a sound rule, and in view of the specific negligence alleged in this case, which was negligent refrigeration, that the burden was upon respondent to prove the negligence alleged. The same rule is declared in *House v. Wheelock*, 244 Ill. App. 270, and *Atlantic Coast Line Railroad Co. v. Georgia Packing Co.*, 5 Cir., 164 F. (2d) 1.

Service Order No. 210 of the Interstate Commerce Commission in force at the time of this shipment, prohibited

common carriers by railroad from icing refrigerator cars loaded with fruits or vegetables originating in South Carolina with more ice than necessary to bring the ice in each bunker up to the ¾'s of the bunker capacity. The full icing capacity of the car furnished by the appellant was 10,800 pounds.

Evidence offered by appellant tended to show that on June 1st at about 6:00 P. M., without pre-cooling, the car was iced to a ¾'s capacity before loading, which amounted to 8,100 pounds. After loading at Lake City it was returned to Florence where it was re-iced on June 2nd at 7:55 P. M., to ¾'s capacity which required 6,300 pounds. It is undisputed that until the beans had become cool that the loss of ice would be much greater than after the beans had become thoroughly chilled.

On June 4th the car was re-iced at 9:54 P. M., at Norfolk, Virginia, which was the next regular icing station, and it then took 5,800 pounds to bring it up to ¾'s capacity, or 8,100 pounds. It was delivered, as heretofore pointed out, on the siding of the consignee at Preston, Maryland, thirty-seven hours later, on June 6th at 11:30 o'clock A. M., and the bunkers were then found devoid of ice and the shipment of beans spoiled beyond redemption.

The appellant contends that under this testimony it discharged the full measure of its legal duty in accordance with its contract for standard refrigeration, and that having proved without contradiction that it re-iced the shipment at all regular icing stations en route—at Florence, and Norfolk—affirmatively showed complete performance of its legal obligation in refrigerating the shipment.

We think the position of the appellant as stated is untenable. Assuming that appellant showed by uncontradicted evidence that this refrigerator car was re-iced to ¾'s of its capacity at Florence and Norfolk, a reasonable inference of negligence may be drawn from the evidence submitted by

respondent which was sufficient to authorize the submission of the case to the jury.

The evidence offered by appellant tends to prove that when this car was iced at Florence on June 2nd at 7 :55 P. M., to its ¾'s capacity, there still remained in it at the time of the re-icing at Norfolk on June 4th at 9 :54 P. M., after a period of fifty hours, 2,300 pounds of ice, (which is the difference between 5,800 pounds in the car and the 8,100 pounds, its ¾'s capacity). Under these circumstances, a reasonable inference may be drawn that on June 6th at 11 :30 A. M., when it was delivered and inspected at Preston, 37 hours and 36 minutes later, much more than 2,300 pounds should have been found in the bunkers. In any event, it would be reasonable to infer that if the car received 8,100 pounds, its ¾'s capacity at Norfolk, then at least 2,300 pounds would have been found therein at destination, because there is no evidence showing any marked variation in the summer time temperature during the period covered by the shipment, or any unusual circumstance affecting refrigeration. However, when opened the car was empty of ice.

Any fact in issue may be established by circumstantial evidence, if the circumstances, which must themselves be proved, lead to the conclusion with reasonable certainty. A well connected train of circumstances is as cogent of the existence of a fact as any array of direct evidence, and may outweigh opposing direct testimony. It is sufficient if there is evidence from which the fact can properly be inferred. 32 C. J. S., Evidence, § 1039, pages 1099, 1100. Inferences drawn from physical facts, such as the empty bunkers, may be as strong as direct evidence. Such inferences amount to circumstantial evidence and circumstantial evidence, when sufficiently strong, is as competent as positive evidence to prove a fact. *Powe v. Atlantic Coast Line R. Co.*, 161 S. C. 122, 159 S. E. 473.

The evidence shows that the beans when shipped from Lake City were in sound marketable condition and that when the carload shipment was delivered at Preston four days later they were decayed and deteriorated to such an extent as to be worthless, and even the baskets in which they were packed appeared to be charred from heat. The ventilators of the car were closed and the ice bunkers contained no ice. We think the respondent sustained the burden of proof. From the facts proved the jury could infer the existence of other facts reasonably and logically consequent on those proved, and, consequently, the jury in the present case was authorized to find from the evidence that the appellant was guilty of negligence in failing to give the standard refrigeration contracted for.

Appellant complains that the trial judge erred in his charge on measure of damages. A portion of the charge giving rise to this exception reads as follows:

"I charge you the measure of his damage in that event (if they should find for respondent) would be the intrinsic, which means the actual or real value of the shipment of beans at the time of the delivery of the shipment to the defendant at Lake City. And, in determining what that actual or real value was you would resort to the evidence that you have heard, placing the burden upon the plaintiff * * *."

It is argued that the market value of the shipment should have been determined at its destination, which was Preston, Maryland, or the nearest market, instead of the ascertainment of its actual value at Lake City, the initial starting point.

The measure of damages in a case of this kind usually presents a difficult problem. The authorities are at some variance, and since it seldom happens that the factual background of any two cases is exactly alike, the facts of the particular case need to be kept in mind.

The Court stated in *McElveen v. Atlantic Coast Line R. Co.*, 210 S. C. 556, 43 S. E. (2d) 485, 489, quoting from 9 Am. Jur. Sec. 780, page 906:

"In the absence of any provision to the contrary, the measure of damages for property injured by a carrier in the course of transportation is *ordinarily* the difference between its market value at its destination as it would have arrived but for such injury, and its market value in the condition in which it actually arrives." (Emphasis added.) The same rule is declared in *The Ansaldo San Giorgio I v. Rheinstrom Bros. Co.*, 294 U. S. 494, 55 S. Ct. 483, 79 L. Ed. 1016.

It is uncontradicted that there was a regular market for green beans at Lake City, but as in all active markets of the kind, the price varied from hour to hour and from day to day, depending on the law of supply and demand. The evidence shows that there was no market for green beans at Preston, Maryland, the point of destination.

There is no hard and fast rule of fixing values when applied to property at places where there is no market. Any method adopted, which is obviously fair, and which duly conserves the rights and interest of the party to be made liable, will satisfy legal requirements. Undoubtedly the criterion for determining the damages for loss of, or injury to, property in transit ordinarily is the market value at destination. Some cases hold that if there is no market value at the point of destination then recourse should be had to the nearest market, however, there is wide divergence among the authorities upon this point of having recourse to the nearest market.

In our opinion, the proper rule for determining the value of a shipment where there is no market value at the point of destination is soundly expressed in 13 C. J. S., Carriers, § 264d, page 614. It is there said: "Where there is no market value for the property at the point of destination, the in-

trinsic or actual value is the basis for determining the amount of damages sustained by reason of loss of, or injury to, such property, and not its market value at the nearest market * * *."

The nearest market to Preston, Maryland, similar to the Lake City market, was Salisbury, Maryland. The respondent testified that he knew of no way to find out what the market for green beans was at Salisbury on June 6th, except perhaps by interviewing the auction brokers there and looking up the records. Of course, the market for green beans existing at Lake City or Salisbury differed widely from such markets as the cotton or stock market with their published quotations of prices.

The local market for green beans at Lake City is established by the fact only that buyers were present and bid on the beans, but no market quotations of the price of beans is made or published. In other words, the market at Lake City was the price between one who desires to purchase and one who desires to sell. This particular shipment of beans was sold by respondent to H. B. Wright & Sons of Preston, Maryland, who operate a large cannery, for One and 65/100 ($1.65) Dollars per bushel-hamper, F. O. B. Lake City, which would total One Thousand Fifty-six and 00/100 ($1,056.00) Dollars. The contract to purchase was contingent upon receipt of the beans by the consignee in sound condition. It was not only shown that if the beans had arrived at Preston in sound condition their intrinsic value would have been One Thousand Fifty-six and 00/100 ($1,-056.00) Dollars, but considerable evidence was introduced tending to prove that this was their real value at Lake City.

We think under the circumstances shown here the trial judge committed no error in his charge to the jury covering the measure of damages.

The next issue has to do with the admission in evidence of certain statements made by Mr. D. W. Cartwright, the local agent of the Pennsylvania Rail-

road at Preston, to the respondent. The main objection directed to this evidence was that Mr. Cartwright, the agent in question, was not the agent of appellant. On this ground, it is argued that the statement objected to was not admissible.

It will be recalled first that when the refrigerator car containing the shipment of green beans was placed on the siding of the consignee, H. B. Wright & Sons, it was immediately inspected by Mr. Wright and by Mr. Cartwright; and, as already stated, the ventilators of the car were found to be closed, there was no ice in the bunkers, and the beans were burned and valueless. Later, when Mr. McCready, the respondent, went to investigate the matter at Preston he talked with the local agent, Mr. Cartwright, and quoted him as saying that "The beans were absolutely burned up, they were not any good, they couldn't use them, that some of the baskets were even charred," and he was further quoted as saying that no ice was in the bunkers of the car upon arrival.

This evidence was admitted by the trial judge on the ground that a sufficient privity existed between the appellant, Atlantic Coast Line Railroad Company, and Pennsylvania Railroad Company under the Carmack Amendment, warranting its admission. We agree with the trial judge.

As regards the effect of the Carmack Amendment, 49 U. S. C. A. Section 20(11) (12), in a situation such as that under consideration, the Court in *Freedman v. Erie R. Co.*, 246 Ill. App. 479, expressed the correct rule:

"The responsibility of connecting carriers is that of agents for the initial carrier receiving shipments from that carrier, and each of the carriers is liable for loss or damage to goods shipped over its particular line during the course of the shipment." See Annotation 106 A. L. R., 1156, 1159, 1163.

The delivering carrier of this interstate shipment, the Pennsylvania Railroad Company, was therefore under the

Carmack Amendment the agent of the appellant, the initial carrier. And as the Pennsylvania Railroad Company could only act through its officers and agents we can see no special difficulty in holding that Cartwright to all intents and purposes, in a case of this character, was the agent of appellant.

It is said, however, that his quoted report was inadmissible because it consisted of a narrative statement of a past transaction and was not part of the *res gestae*. However, these statements involved the business of the agency and were connected with his duties as agent; nor was the transaction concluded when these alleged statements were made by Mr. Cartwright to the respondent.

We have held that as long as anything remains to be done in the transaction, statements of the agent made within the scope of his agency are competent as part of the *res gestae,* although relating to a past event. *Williams v. Western Union Telegraph Co.,* 138 S. C. 281, 136 S. E. 218, 220.

It was said in the above case: "We do not consider the application of the *res gestae* to a case of this kind as confining the matters to so narrow a limit. We prefer to adopt the view that so long as anything remains to be done, the statements of the agent are competent, if made within the scope of his agency." Cited as supporting authorities are *Lane v. Boston A. R. Co.,* 112 Mass. 455, and *Green v. Boston L. R. Co.,* 128 Mass. 221, 35 Am. Rep. 370. We think the testimony was admissible. Furthermore, it was cumulative and appellant could not have suffered any prejudice.

Objection was made to the introduction in evidence of a post card which was a report from D. W. Cartwright, the local agent of the Pennsylvania Railroad Company, addressed to the respondent, which carried a notation to the effect that the shipment of beans was refused

on account of being heated. We think there is no merit in this contention. The post card bears date June 7, 1944, which is the day following the arrival of the spoiled shipment of beans at Preston. Mr. Cartwright, the local agent, by this card notified the respondent that the shipment had been refused on account of being heated. The handwriting on the card was identified as being that of Mr. Cartwright and there was no evidence offered by appellant to the contrary. The card had printed on it the name of the Pennsylvania Railroad Company and contained a form evidently designed to notify shippers generally of the status of shipments. We see no error.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.