16178

HOLLAND ET AL. v. GEORGIA HARDWOOD LUMBER CO.
ET AL.

(51 S. E. (2d) 744)

196

*Messrs. James Julian Bush* and *Edgar A. Brown*, of Barn-well, *for Appellants,*

*Messrs. Benj. A. Bolt,* of Greenville, and *R. S. Jones,* of Franklin, N. C., *for Respondents,*

February 3, 1949.

FISHBURNE, Justice.

This is a proceeding under the Workmen's Compensation Act. Two questions are presented for determination by this court: (1) Was the decedent, J. B. Holland, at the time of his death, an employee of Georgia Hardwood Lumber Company? (2) Was sufficient evidence adduced from which the reasonable inference could legitimately be drawn, that the decedent's death resulted from an accident arising out of and in the course of his employment?

The hearing commissioner found that J. B. Holland was, with respect to the alleged work in which he was engaged at the time of his fatal injury, an employee of the Lumber Company, and granted an award. A majority of the commission

took the opposite view, reversed the findings of the commissioner, and denied the award. They held that at the time of the fatal accident, the decedent was a passenger on the truck in which he met his death; that his death did not result from an accident arising out of and in the course of his employment; that he was not under orders or instructions from the appellant, and that he did not have any duties to perform with reference to the truck. Upon exceptions being taken to the Greenville County Court, that court reversed the Industrial Commission, and held, in accord with the hearing commissioner, that the decedent was an employee of the Lumber Company, and reinstated the award for compensation.

Before the provisions of the Workmen's Compensation Act can become applicable, the relation of master and servant, or employer and employee, or some appointment must exist. This is the initial fact to be established, and this is the first question we shall consider.

The Act defines an employee as a "person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written * * *." Code, Section 7035-2.

"This relation is contractual in character and to constitute one an employee it is essential that there shall be a contract of service. However, no formality is required. The contract may be oral or written. It may be accomplished with a few words, or it may be implied from conduct without words. It is sufficient if the circumstances show unequivocally that the parties recognize each other as employer and employee. 'A contract will arise even where the employer does not intend to enter into one, if his conduct is such as to lead claimant, acting as a reasonable man, or in good faith, to believe that he is being employed'. 71 C. J., Page 431. Moreover, 'the hiring, or contract for employment, is the jurisdictional factor' and not the actual commencement of work thereunder. *Simpkins v. Lumbermen's Mutual Cas-*

*ualty Co.,* 200 S. C. 228, 20 S. E. (2d) 733, 738". *Alewine v. Tobin Quarries, Inc.,* 206 S. C. 103, 33 S. E. (2d) 81, 83.

We have uniformly held that where the jurisdiction of the Industrial Commission to hear and consider a claim for compensation under the provisions of the South Carolina Workmen's Compensation Act, Code, Section 7035-1 *et seq.,* is challenged by an employer on the ground that such employer is not subject to the provisions of the Act, the findings of fact made by the Commission on which its jurisdiction is dependent, are not conclusive. The circuit court, and this court on appeal of either party to the proceeding, has both the power and the duty to consider all the evidence in the record and find therefrom the jurisdictional facts, without regard to the finding of such facts by the Commission; and will conclude the issue in accord with the preponderance of the evidence. *Watson v. Wannamaker & Wells, Inc.,* 212 S. C. 506, 48 S. E. (2d) 447; *Miles v. West Virginia Pulp & Paper Co.,* 212 S. C. 424, 48 S. E. (2d) 26; *Tedars v. Savannah River Veneer Co.,* 202 S. C. 363, 25 S. E. (2d) 235, 147 A. L. R. 914; *McDowell v. Stilley Plywood Co.,* 210 S. C. 173, 41 S. E. (2d) 872; *Knight v. Shepherd,* 191 S. C. 452, 4 S. E. (2d) 906.

In a proceeding of this kind before the Commission, for compensation, the burden of proving the relationship of employer and employee is upon the claimants, who are the father and mother of the decedent. And this proof must be made by the greater weight of the evidence. The Industrial Commission found as a matter of fact, and ruled as a matter of law, that the decedent, J. B. Holland, was not an employee of the Georgia Hardwood Lumber Company at the time he met his death.

The direct testimony in this case offered by the lumber company, and the circumstantial evidence introduced by claimants, as to whether or not the decedent was an employee of the Lumber Company at the time he was killed, are materially conflicting. But in our opinion, the prepond-

erance of the evidence is in accord with the finding made by the Commission, which held that at the time of his accidental death, the decedent was not employed by the Lumber Company.

The record discloses that J. B. Holland had been intermittently employed by the appellant lumber company for about two years prior to his accidental death, on May 19, 1946. He was employed on an hourly basis and his wages approximated sixty cents an hour. He appears to have been mainly hired as a truck driver in the hauling of logs to the mill, but he had also performed work in the planing mill and in the sawmill operated by the lumber company at its plant at Cleveland, South Carolina.

· A separate corporation known as Mill Stores, Inc., owned two stores, one at Cleveland, South Carolina, and the other at Jackson, Mississippi. The store at Cleveland was operated as a commissary for the convenience of persons in the employment of the lumber company and for others who wished to trade there. Mr. J. L. Murray, who was the manager of both stores, wanted to ship a load of corn meal from Cleveland to the store at Jackson, Mississippi. Similar shipments of meal had theretofore been made in trucks hired by Murray from the lumber company, but the decedent, Holland, had never been engaged as driver or otherwise placed in charge of such trucks.

Carl Gregg, an employee of the Lumber Company at Cleveland, desired to transfer his household goods from Jackson, Mississippi, where he formerly resided, to Cleveland, South Carolina, and learning of Mr. Murray's intentions with reference to the shipment of corn meal, he interviewed him and thereafter undertook to obtain the use of a truck from the Lumber Company for this double purpose. Murray told Gregg that this would be agreeable to him, but that Gregg would have to make the arrangement with Mr. Cheatham, who was the manager of the Georgia Hardwood Lumber Company at Cleveland, and in charge of the trucks.

Gregg then went to see Mr. Cheatham for the purpose of securing the necessary truck. Present on this occasion were Mr. Cheatham, Gregg, and Luke Clark, who was the foreman of the Lumber Company planing mill and the father-in-law of Gregg.

It was mutually agreed between Gregg and Mr. Cheatham that the lumber company would furnish the truck to be used in taking the meal from the store at Cleveland to Jackson, Mississippi, and in bringing back the household furniture of Carl Gregg. Gregg was to be in charge of the truck as driver and was to be paid by the lumber company his regular hourly wage for the time consumed in making the trip. Reimbursement was to be made to the lumber company by the Mill Store, on a cost plus basis for the transportation of the meal. The fact that Gregg was alone authorized to control and drive the truck owned by the appellant lumber company on the trip to Jackson, Mississippi, is shown by the direct and positive evidence given by Mr. Cheatham and Mr. Clark. There is no testimony from Gregg because he met his death in the same accident with Holland.

The agreement above referred to was made on Saturday, May 18, 1946, and the loading of the truck with the meal was completed at the mill store about midday on Sunday, May 19th. When the truck left at Midday on the trip to Jackson with the corn meal, it was occupied by Carl Gregg, J. B. Holland and Allen Clark, a young son of Luke Clark. In the afternoon of the same day, near Westminster, South Carolina, the truck left the paved highway and plunged down a thirty foot embankment, caught fire, and burned up. The three occupants, Gregg, Holland and Clark, died as a result of burns and injuries received in the accident without regaining consciousness. There were no eyewitnesses to the accident.

It is contended by the respondent claimants that there is sufficient circumstantial evidence tending to show that Holland and not Gregg was engaged by the lumber company

and authorized to drive and have charge of its truck on this trip from Cleveland to Jackson. To support this contention, they direct attention to the following circumstances:

In order to prepare the truck for the trip to Jackson, it became necessary to convert it from a logging truck to a freight truck by constructing a body or bed upon it. It may be inferred that Holland assisted in doing this work, although the testimony is in conflict. All of the witnesses stated that Holland was a careful and capable driver, and that the truck selected for the trip and involved in the accident, was the one Holland had been accustomed to drive in hauling logs for the mill. On the Saturday night before the departure next day, Holland told more than one person that he was going to haul a load of corn meal from Cleveland to Jackson, Mississippi, and he made two fruitless efforts that night—driving the same truck—to obtain a canopy or tarpaulin with which to cover the loaded meal. The canopy which was used was obtained by other employees of the lumber company. Carl Gregg, with Holland and others, styled as self appointed helpers, checked the truck tires in front of the mill store, immediately prior to leaving.

One witness testified that he saw Mr. Murray, the manager of the store, give to Holland an envelope and request a report from the person to whom it was to be delivered; and this witness stated that Holland placed the envelope in the glove compartment of the truck. Mr. Murray specifically denies this. He testified that he was not at the store when the truck drove off, and did not know that Holland had left on the truck until the accident occurred and he heard of Holland's death. He further testified that he mailed the invoice covering the shipment of corn meal to the person in charge of the store at Jackson.

A witness for the claimants testified that he heard Mr. Luke Clark, foreman of the planing mill, tell Holland several days before the trip was made, that if it stopped rain-

ing (the weather was unsettled), they would haul logs; but that if it continued to rain they would go to Jackson. Mr. Clark testified, however, that he had nothing to do with the employment of labor or the management of the lumber company's trucks; and that he did not know that Holland was going with the truck transporting the corn meal until about fifteen or twenty minutes before its departure, when he heard he intended to go along. He said that he was with his young son, Allen Clark, sitting in an automobile near the mill store prior to the truck's departure, and that ten or fifteen minutes before the truck left, his son suddenly decided that he, too, would go in the truck to Jackson.

It may be inferred from the testimony that Holland got in on the left-hand side under the steering wheel, with Carl Gregg in the middle, and Allen Clark sitting on the outside of the seat; and that Holland drove the truck away from in front of the mill store. Also, it may be inferred, that following the wreck later that afternoon, Holland's body was pulled from beneath the steering wheel. Whether Carl Gregg invited Holland to accompany him on the trip and to assist in driving the truck with which he was familiar, or whether he was a mere volunteer, does not appear; but there is evidence that some two weeks prior thereto Holland expressed a desire to go to Mississippi to see the country. Holland had no part in the loading of the truck with the corn meal; it was loaded by Mr. Murray, Gregg, and two other employees of the store.

According to respondents' evidence, Carl Gregg, who negotiated the agreement for the use of the truck, had not driven any of the lumber company's trucks since some time before, when he had pulled a clutch out of one. However, from the testimony of Mr. Cheatham, he regarded Gregg as a competent driver. And he stated that he did not engage Holland to drive the truck, had no conversation with him thereabout, and did not know that he had gone on the truck until he heard of the accident, and learned of Holland's death

along with Gregg and young Allen Clark. There is no testimony in the record with respect to any employment of Holland by the lumber company with reference to this special transaction, nor any authorization or direction relating to his being allowed to ride on the truck to Mississippi.

Several days after the fatal accident, the lumber company delivered a check to the brother of the deceased in the sum of approximately $13.00; this check was issued in payment of wages earned by the deceased up to May 16, 1946, three days prior to the accident.

The county court found that there was a preponderance of evidence in favor of the claimants' contention that Holland at the time of the accident was an employee of the lumber company, and that his death arose out of and in the course of his employment. The court stated that the probabilities of the case were considered in arriving at its conclusion.

It will be noted that the case of the claimants depends altogether on circumstantial evidence as opposed to the direct evidence, herein referred to, precisely on the point that Gregg and not Holland was employed to handle the truck on its trip to Mississippi; and that Mr. Cheatham, who alone had authority to enter into such an agreement, not only did not authorize Holland to accompany Gregg, but did not even know that he had gone on the truck until he heard of his death.

It is a well recognized rule that an issue may be proved by circumstantial evidence. But for circumstantial evidence to be sufficient to warrant the finding of a fact, the circumstances must lead to the conclusion with reasonable certainty, and must have sufficient probative value to constitute the basis for a legal inference, and not mere speculation. The facts and circumstances shown should be reckoned with in the light of ordinary experience, and such conclusions deduced therefrom as common sense dictates. *Leek v. New South Express Lines,* 192 S. C. 527, 7

S. E. (2d) 459. The existence of a fact or facts cannot rest in speculation, surmise or conjecture.

From a careful consideration of the evidence in this case, we think that the direct testimony of Mr. Cheatham, the manager of the lumber company, with reference to the employment of Carl Gregg to drive the company's truck, corroborated by Clark, cannot arbitrarily be disregarded. It is not inconsistent with the other circumstances of the case, and outweighs the circumstantial evidence upon which the claimants place their reliance.

The holding of the Industrial Commission, that the deceased was not an employee of the Lumber Company, and that his accidental death did not arise out of and in the course of his employment, must be sustained. We are not unmindful of the rule to which this court is committed, to the effect that the purpose of the Workmen's Compensation Act is to include employees and not to exclude them. *Jolly v. Atlantic Greyhound Corporation,* 207 S. C. 1, 35 S. E. (2d) 42. Liberal construction in favor of the employer-employee relationship, however, does not warrant violence to a specific requirement of the Act. *Wallace v. Campbell Limestone Co.,* 198 S. C. 196, 17 S. E. (2d) 309.

Closely examining the evidence upon which claimants rely to establish the fact in issue as to the employment of the deceased by the lumber company, we are unable to find anything which does more than give rise to surmise and speculation. It follows that the judgment of the county court must be reversed and the finding of the Commission reinstated and affirmed.

Judgment reversed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.