17110

BERTHA ATTAWAY, Administratrix of Estate of J. L. Attaway, Appellant, v. ONE CHEVROLET 5-P TRUCK, Motor No. LEA 852870, 1953 License P 1392, and ERNEST NIX, Respondents

(91 S. E. (2d) 270)

*Messrs. M. J. Yarbrough,* and *Griffith, Coleman & Griffith,* of Saluda, *for Appellant,*

*Messrs. Haynesworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Respondents,*

February 6, 1956.

TAYLOR, Justice.

This appeal arises out of an action brought in the Court of Common Pleas for Saluda County in which appellant seeks damages for the alleged wrongful death of a minor, J. L. Attaway, by reason of the negligent operation of the respondent truck by respondent, Ernest Nix.

At the conclusion of appellant's testimony, motion was made for a nonsuit on the ground that appellant had failed to prove any actionable negligence or recklessness operating as a proximate cause of the accident against the truck or

the driver, Nix, and on the further ground that the testimony showed that the proximate or contributing cause of the accident was the actions of the deceased intestate. The trial Judge granted the motion for a nonsuit on both grounds.

The specifications of negligence set forth in the complaint are:

a. That the truck was being driven at an excessive speed;

b. That it was improperly loaded with the weight unbalanced;

c. That the driver was not keeping proper lookout while meeting other cars upon the highway;

d. That the truck was at the time being driven in a heedless, reckless manner in disregard of the rights of the deceased;

e. That the driver of said truck did not have same under proper control at the time of injury; and

f. That the speed was excessive and dangerous to the deceased in that the driver knew that the load was not securely fastened and tied down.

There is very little, if any, conflict in the testimony. The driver of the oncoming car testified to the effect that at the time of meeting the truck, he saw a mattress rise from the truck two or three times and each time it came closer to the edge of the truck; that as his car came abreast of the truck, the front of his car and windshield were suddenly covered with a mattress. Upon stopping, he noticed that the truck had gone a short distance where it was stopped in a side road off the highway. He turned around, drove back to the truck, and informed the driver that the mattress had blown from his truck breaking his windshield and damaging his car. The driver of the truck then inquired if he had seen anything of the colored boy, J. L. Attaway, who had been riding on the mattress. When he replied that he had seen only the mattress, respondent, Nix, got in the car of a passerby and proceeded to look for the boy and found him lying in the ditch which was on the left side of the highway facing in the direction the truck was

traveling. Mr. Nix requested that an ambulance and high-way patrolman be summoned. The dent on the front of the car in the opinion of the driver could not have been made by the mattress alone.

The respondent, Nix, testified he had borrowed the dump truck from his employer for the purpose of moving from Johnston to Newberry and had asked the deceased to assist him; that he was accompanied at the time by two other persons who were riding in the cab with him, and the deceased was riding on the mattress in the body of the truck; that he was traveling between 35-40 miles per hour and was unaware that anything was amiss until he heard a sharp report similar to that of a pistol shot at the exact moment he was abreast of the oncoming car. Observing through the rear view mirror that the car had swerved across the road and come to a stop, he slowed down and stopped at the first opportunity to pull off the highway where he was joined shortly by the driver of the car who informed him that a mattress had blown from the truck covering and breaking his windshield and denting the front of his car. He then inquired about the boy, but the driver had seen only the mattress. Upon investigation, he found the deceased 'lying in the ditch on the left-hand side of the road severely injured. The ambulance arrived shortly thereafter and the highway patrolman within a short while after that.

Appellant contends that the testimony of the highway patrolman to the effect that Mr. Norville, the driver of the damaged car, stated to respondent Nix in his presence that "he was coming so fast down off of the hill he saw the mattress jump up two or three times" was sufficient to require submitting the case to the jury. This testimony was objected to and the Court's ruling thereon is not clear, but it is not important to the decision here. The positive testimony that the speed was between 35-40 miles per hour is undisputed, and there is no testimony from which the jury could conclude that the truck was improperly loaded or overloaded. On the contrary, the high-

way patrolman testified that upon arrival at the scene he "found a Chevrolet truck partly loaded with furniture." The fact that the mattress fell or was blown from the truck is of itself insufficient to show negligence in its loading.

Of course, an issue may be proven by circumstantial evidence, but for such evidence to be sufficient to warrant a finding of fact, it must lead to the conclusion with a reasonable certainty and have sufficient probative value as to constitute a basis for a legal inference and not mere speculation. Such facts and circumstances must be reckoned with in the light of ordinary experience and the conclusions deduced therefrom by such as common sense dictates, and not rest upon speculation, surmise, or conjecture. *Leek v. New South Express Lines,* 192 S. C. 527, 7 S. E. (2d) 459; *Holland v. Georgia Hardwood Lumber Co.,* 214 S. C. 195, 51 S. E. (2d) 744.

We are, therefore, of the opinion that there was no evidence to go to the jury upon any of the specifications of the complaint; that the trial Judge did not err in granting respondent's motion for a nonsuit. Affirmed.

STUKES, OXNER and LEGGE, JJ., and JOSEPH R. MOSS, A. A. J., concur.